Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000452
23-JUL-2014
08:42 AM

NO. CAAP-13-0000452

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

MAUI MUSCLE SPORTS CLUB KAHANA, LLC, A HAWAIʻI
LIMITED LIABILITY COMPANY, Plaintiff-Appellant,
v.
ASSOCIATION OF APARTMENT OWNERS OF VALLEY ISLE RESORT,
A HAWAIʻI NON-PROFIT CORPORATION; JOHN DOES 1-50,
JANE DOES 1-50, DOE PARTNERSHIPS 1-50, DOE CORPORATIONS 1-50,
AND DOE ENTITIES 1-50, Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 12-1-0925(1))

MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Ginoza, JJ.)

Plaintiff-Appellant Maui Muscle Sports Club Kahana, LLC
(**Maui Muscle**) appeals from the:

(1) "Order Granting Defendant Association of Apartment
Owners of Valley Isle Resort's Motion for Summary Judgment,"
filed March 28, 2012 (**Summary Judgment Order**);

(2) "Order Denying [Maui Muscle's] Motion for
Preliminary Injunction," filed December 13, 2012 (**Preliminary
Injunction Order**);

(3) "Order Granting Defendant Association of Apartment
Owners of Valley Isle Resort's Motion for Order to Show Cause Why
[Maui Muscle] and John G. Horak, Esq. Should Not Be Held in
Contempt for Violation of the Court's Oral Ruling on December 6,
2012," filed February 7, 2013 (**Contempt Order**);

(4) "Order Amending February 7, 2013 Order Granting
Defendant Association of Apartment Owners of Valley Isle Resort's
Motion for Order to Show Cause Why [Maui Muscle] and John G.

Horak, Esq. Should Not Be Held in Contempt for Violation of the Court's Oral Ruling on December 6, 2012," filed March 28, 2013 (**Amended Contempt Order**); and

(5) "Order Granting in Part and Denying in Part Association of Apartment Owners of Valley Isle Resort's Motion for Mandatory Injunction," filed April 26, 2013 (**Mandatory Injunction Order**). All orders were filed in the Circuit Court of the Second Circuit[1] (**circuit court**).

Maui Muscle contends the circuit court erred by:

(1) adjudicating the merits of the case in the Preliminary Injunction Order without giving parties notice;

(2) misconstruing the Preliminary Injunction Order as enjoining Maui Muscle from making representations to County of Maui officials (**County**);

(3) imposing sanctions on Maui Muscle based upon the misconstrual via the Contempt Order;

(4) concluding that Hawaii Revised Statutes (**HRS**) Chapter 514B clearly and ambiguously governed the parties' governing documents;

(5) concluding that no genuine issue of material fact existed regarding the extent of the parties' ownership interests in subject properties;

(6) concluding Defendant-Appellee Association of Apartment Owners of Valley Isle Resort (**AOAO**) was responsible for "common elements" of the properties; and

(7) concluding AOAO had the sole right and responsibility to perform repairs, maintenance, rebuilding, and reinstatement of those common elements.

## I.  BACKGROUND

This appeal arises out of a dispute concerning the extent of the parties' respective ownership and control over a two-story building located in the vicinity of the Valley Isle Resort Condominium Project (**Project**). The Project is situated on land that was submitted to a condominium property regime, and defined in the Second Restatement of Declaration of Horizontal

_____

[1]     The Honorable Rhonda I.L. Loo presided.

Property Regime for the Valley Isle Resort Condominium, as amended (**Declaration**).

The Project was built in 1973 and consists of a twelve story building with 120 living units (the **Tower**), a two-story commercial facilities building covering 10,745 square feet, (the **Commercial Unit**), a covered walkway area, a parking lot, and other service areas, all located at 4327 Lower Honoapiʻilani Road, Lahaina.

The Declaration was recorded on December 1, 1994 in the State of Hawaiʻi Bureau of Conveyances as Document No. 94-197003, as thrice amended.[2]

Maui Muscle's business is located in the Commercial Unit building. Under section 4 of the Declaration, the entire two-story building is considered "one commercial apartment[.]" Section 4(a) of the Declaration specifies:

> (a) <u>Limits of Apartments</u>. The apartment shall not be deemed to include the undecorated or unfinished surfaces of the perimeter walls or of the interior load-bearing walls, the floors and perimeter ceilings surrounding each unit, or any pipes, wires, ducts, conduits, or other utility or service lines running through such unit which are utilized for or serve more than one unit, all of which are limited common elements . . . . .

The Declaration includes an easement for owners of residential apartments in the Commercial Unit:

> 10. The two-story commercial building shall be used for such commercial purposes as determined by its owner; provided, however, that if such use is not contemplated by the statement of design intention in Section 3 of this Declaration, as amended, the use thereof shall not be such as might interfere with the enjoyment of their units by residential apartment owners unless the Association's Board

---

[2]    The Declaration was first amended by Amendment to the Declaration of Horizontal Property Regime and By-Laws of Valley Isle Resort, recorded on October 30, 2000 as Document No. 2000-153091.

On April 29, 2011, the Second Amendment to the Second Restatement of Declaration of Horizontal Property Regime for Valley Isle Resort Condominium was recorded as Document No. 2011-070512 (amending the Declaration such that HRS Chapter 514B would govern and approval requirements were reduced from 75% to 67%).

On August 15, 2011, the Third Amendment to the Second Restatement of Declaration of Horizontal Property Regime for Valley Isle Resort Condominium was recorded as Document No. 2011-129536 (**Third Amendment**). The Third Amendment effectuated section 3.1 of a settlement agreement between Maui Muscle and AOAO, discussed <u>infra</u>, whereby the original lobby easement area would be expanded favoring the Tower units and AOAO would pay for expenses related to certain limited common elements of the Commercial Unit. The Third Amendment also referred to a Tower Easement Area, identified as the lobby, manager's office, and the porte cochere easement area, and schematized in a map appended as Exhibit A to the Third Amendment.

of Directors shall have consented to such use. <u>However, the owners of residential apartments shall have an easement to utilize the lobby and manager's office space in the two-story building [(Lobby Easement)] with an easement of entry and access thereto [(Porte Cochere Easement)]</u>, such easements to be used exclusively by the Association of Unit Owners for the purpose of managing the operation of the 12-story building for the owners of residential apartments, for the maintenance of the project as a whole, and for such other related uses as shall be consistent with the operation of such projects in its present zoning under the ordinances of the [County]. Such easements shall be nontransferable apart from the apartments to which they are appurtenant and are granted to the apartment owners of the 12-story building in consideration of their continued obligation to pay all expenses of the grounds maintenance, external lighting, and security for the common areas.

(Emphasis added.)

Administration of the Project is vested in the "Association of Unit Owners" (**Association**) and each owner of a residential apartment is a member of the Association.

Section 6 of the Declaration provides:

6. The common elements shall include each of the elements which is mentioned in [HRS] Chapter 514A and which is actually constructed or provided on the land described above, and specifically includes, but is not limited to the following:

a. Said land described in Exhibit "A"[3];

b. Parking area for 143 cars and driveways;

c. Sewage disposal system;

d. All pipe and equipment relating to the distribution of water, except as designated herein as limited common elements.

e. Primary electrical switch gear and transformer vaults.

If any common element encroaches upon any apartment or limited common elements, or if any apartment encroaches upon any other apartment or common element, a valid easement for such encroachment and the maintenance thereof, as long as it continues, does and shall exist.

Under section 7 of the Declaration, parts of the "common elements" are designated "limited common elements" and are set aside and "reserved for the exclusive use of the [Tower] and the [Commercial Unit]." The "limited common elements" set aside for the Commercial Unit are specified as:

---

[3]     Exhibit A consists of a metes and bounds description of the land upon which the Project is located. HRS § 514A-13, titled "Common elements[,]" was amended in 2004. HRS § 514-13 (Supp. 2004).

(i) All foundations, columns, girders, beams, supports, bearing walls, roofs, passageways, lobbies, hallways, stairs, walkways, elevators, entrances and exists of said two-story building;

(ii) Refuse area for the said two-story building;

(iii) All ducts, electrical equipment, wiring, piping and other appurtenant installations for services, including power, water, light, refuse and telephone for the two-story building;

(iv) All other elements and facilities in use or necessary to the existence, upkeep and safety of the said two-story building.

Maui Muscle became the fee owner of the Commercial Unit pursuant to a Warranty Deed and Assignment of Sublease to Maui Muscle from Leon Roger Richards and Mary Virginia Richards, recorded on January 7, 2000 (**Warranty Deed**). Maui Muscle is a public gym and fitness center, organized as a limited liability corporation and manager-managed by Dale L. Smith (**Smith**).

Maui Muscle's Warranty Deed was subject to the Declaration and the Restatement of Bylaws of the Association (**Bylaws**) recorded on November 16, 1992. Article V, section 4 of the Bylaws provides:

> Section 4. <u>Maintenance and Repair of Common Elements</u>. Except as may otherwise be provided in the Declaration, all maintenance, repairs and replacements of the common elements, whether located inside or outside of the apartment, <u>shall be made only by or at the direction of the Board</u> [of the Association] and be charged to all the Owners as a common expense . . . .

(Emphasis added.)

On July 7, 2011, Maui Muscle, AOAO, and others entered into a settlement agreement (**Settlement Agreement**) disposing of claims litigated in <u>Maui Muscle Sports Club Kahana, LLC v. Association of Apartment Owners of Valley Isle Resort, et al.</u>, Civ. No. 09-1-0321(1) and <u>Association of Apartment Owners of Valley Isle Resort v. Maui Muscle Sports Club Kahana, LLC, et al.</u>, Civ. No. 07-1-0452(2). The Settlement Agreement defines the Commercial Unit as the "commercial facilities building covering approximately 10,745 square feet . . . identified as [TMK] (2) 4-3-010-004 and as more particularly described in the Declaration.

On September 3, 2012, a fire destroyed much of the Commercial Unit. The instant case arises from disputes

concerning which party could control the demolition and rebuilding of the Commercial Unit.

By letter dated October 2, 2012, AOAO wrote to Maui Muscle and Robert H. Joslin (**Joslin**), Maui Muscle's insurance claims adjuster, to assert in part AOAO's obligation to repair and maintain common and limited common elements in the Commercial Unit and its right to access units for such purpose.

By letter dated October 4, 2012, AOAO's authorizing agent notified the County Department of Public Works (**DPW**) and Environmental Management that Michael Wright & Associates, Inc. (**MWA**) was authorized to act on AOAO's behalf for all necessary permit applications and supporting documentation in reference to TMK (2) 4-3-010:004 (the Commercial Unit).

On November 14, 2012, AOAO obtained a demolition/ building permit, Permit No. B 2012-1417 (**Permit 1417**), from the County for the Commercial Unit.

On November 26, 2012, Maui Muscle filed a complaint alleging AOAO was trespassing on Maui Muscle's property, the Commercial Unit, and requested declaratory and injunctive relief. On November 27, 2012, Maui Muscle filed a motion for a preliminary injunction to enjoin AOAO from obtaining a demolition/building permit from the County to complete work on the Commercial Unit and entering the Commercial Unit. Maui Muscle alleged that AOAO and its representatives had repeatedly entered the Commercial Unit after the fire loss, removed Maui Muscle property, and brought contractors onto the site to perform demolition work. These actions, according to Maui Muscle, would impair efforts to preserve evidence for insurance adjustment purposes and thus result in irreparable harm to "Maui Muscle's rights to recover for their considerable loss from the blaze." Maui Muscle further alleged that the burnt premises had been "deemed hazardous due to asbestos content and may only be disturbed by . . . trained and licensed hazmat crews." AOAO's contractors are allegedly not licensed to remediate asbestos and therefore AOAO's "improper demolition" exposed Maui Muscle to liability.

A declaration by Smith was attached to the preliminary

6

injunction motion. Smith declared he witnessed AOAO, under the direction of its on-site management firm, Hawaiian Management, and their contractors dismantling protective fencing that Maui Muscle installed around the burnt property and performing contracting work, including demolition work.

A declaration by Joslin was also attached to Maui Muscle's preliminary injunction motion. Joslin stated Smith had contacted him on the morning of the September 3, 2012 fire and that evening the Maui County Fire Department relinquished the commercial building site to Maui Muscle and Joslin's employer, Hawai'i Public Adjusters.

The circuit court granted Maui Muscle's motion and issued a temporary restraining order (**TRO**). The TRO ordered AOAO and its representatives, pending the hearing on Maui Muscle's preliminary injunction motion, be restrained from

> (1) . . . entering upon the commercial improvements owned by Maui Muscle, except the areas [known] as the Lobby easement and Porte Cochere easement as set forth and described in [the Settlement Agreement] and to the extent that [AOAO] is or may be responsible for repair, maintenance or improvements in those specified areas or such other areas as that agreement or any other agreement between the parties provides . . . without a written approval from Dale Smith, owner and principal for Maui Muscle.

> (2) FURTHER ORDERED that [AOAO and their representatives] are restrained from obtaining a demolition and/or building permit from the [County] to complete work on the Premises, except the areas [known] as the Lobby Easement and Porte Cochere Easement . . . and to the extent that [AOAO] is or may be responsible for repair, maintenance or improvements in those specified areas or such other areas . . . without written authorization from [Smith], owner and principal for Maui Muscle.

On December 4, 2012, AOAO filed their opposition to Maui Muscle's preliminary injunction motion, to which AOAO attached six declarations and exhibits A through X. AOAO's opposition requested Maui Muscle's preliminary injunction motion be denied and the TRO be dissolved. AOAO stated it had informed Joslin that it had engaged a licensed asbestos contractor, but Joslin still objected to AOAO's efforts to perform any work without Maui Muscle's approval.

At the December 6, 2012 hearing on Maui Muscle's

preliminary injunction motion, Maui Muscle's counsel, John Horak (**Horak**), asserted that Maui Muscle needed

> to document and record and inventory evidence of its insurance loss that's covered by a number of policies on the site. Any entry into the entire building alters those aspects . . . and because of that situation, there needs to be an order enjoining any activities there while – preliminarily while this evidence is being documented.

Maui Muscle did not call any witnesses to testify at the December 6, 2012 hearing. Horak stated that there was "enough supporting documentation in the moving papers with the attachments and the opposition to the motion and the exhibits for the [circuit court] to make its ruling on a preliminary injunction." Horak inquired into the necessity of taking direct testimony from witnesses to admit exhibits that were attached to motions and submitted with declarations because those exhibits and declarations were already on the record and before the circuit court.

The circuit court stated it was "used to hearing evidence from witnesses and so on and so forth" in preliminary injunction hearings and

> having heard from [Horak] today, that he's basically relying on the motion that he filed and the declaration attached to that particular motion; and hearing [AOAO counsel's] argument, that [Maui Muscle] has not met its burden, the [circuit court] is going to go ahead and grant [AOAO's] motion to dismiss.

Presumably, the circuit court's reference to AOAO's "motion to dismiss" referred to AOAO's opposition to Maui Muscle's preliminary injunction motion. The circuit court also dissolved the TRO against AOAO. These actions apparently constitute the circuit court's December 6, 2012 oral order (**Oral Order**), which is at issue in this case.

On December 6, 2012, subsequent to the hearing, Horak and Joslin met, and according to a declaration by Horak, Joslin was going to meet with the County's permitting department processing Maui Muscle's commercial tenant improvements in the same parcel location and building subject to AOAO's demolition and alteration permits. AOAO's permit depicted partial

demolition and alteration at the parcel identified as TMK 24-3-010:004-0121. Horak and Joslin met with County officials that day and according to Horak's declaration he "understood that the County was going to review the various permits for the commercial building."

In a declaration submitted by Joslin, he stated that as an agent for Maui Muscle, he was required to determine the scope of work necessary to rebuild Maui Muscle's commercial building according to current standards, ordinances, and laws, including those of the County. At the December 6, 2012 meeting, Joslin asked the DPW Director (**Director**), to identify the responsible party in a permit application for construction activities. Joslin declared the Director's response was that property owners are required to authorize such permit applications and must submit a Property Owner's Authorization letter to DPW. DPW then determined Maui Muscle and not AOAO was the proper applicant for Permit 1417.

A declaration from Michael Wright (**Wright**) of MWA stated the Director contacted him on December 6, 2012 regarding AOAO's Permit 1417. Wright declared he was advised that Joslin and Horak "represented that the AOAO had no authority to apply for Permit 1417 without [Smith's] written authorization because [Maui Muscle], not the AOAO, was the owner of the property for which Permit 1417 was obtained[.]" According to Wright, Joslin and Horak's statements caused the Director to become concerned that Permit 1417 was improperly issued and therefore the County intended to rescind the permit.

On December 7, 2012, the County posted a stop-work warning sign that stated Permit 1417 was suspended until further notice. By letter dated January 3, 2013, the County also denied Maui Muscle's permit application, citing failures to conform to building code provisions and to obtain energy code certification.

On December 10, 2012, Maui Muscle objected to AOAO's proposed order denying Maui Muscle's motion for preliminary injunction. On December 13, 2012, the circuit court entered the

order as proposed by AOAO, which provided: (1) AOAO was not prohibited from entering upon commercial improvements owned by Maui Muscle "if such entry is in accordance with that certain [Declaration]"; (2) AOAO was not restrained from obtaining a demolition and/or building permit from the County to complete work on the premises; (3) written approval from Maui Muscle was not required for AOAO to take the aforementioned actions unless required by the Declaration; and (4) AOAO would be awarded attorney's fees and costs.

On December 17, 2012, AOAO filed an answer to Maui Muscle's November 26, 2012 Complaint, denying all allegations. On December 19, 2012, AOAO filed a motion for an order to show cause why Maui Muscle and Horak should not be held in contempt of court (**Motion for Order to Show Cause**). On January 16, 2013, Maui Muscle filed its opposition to AOAO's Motion for Order to Show Cause. On January 24, 2013, the circuit court held a hearing on AOAO's Motion for Order to Show Cause and orally granted the motion stating:

> As far as holding [Maui Muscle] in contempt, [circuit court] finds, first of all, that <u>during the hearing on December 6, 2012, that the [circuit court] specifically ruled that [Maui Muscle] had not met its burden for preliminary injunction</u>.
>
> The reason why the [circuit court's] order was so simple was because there was no evidence presented to the [circuit court]. That's why it was -- it was a fairly straightforward, simple order, which [AOAO's counsel] prepared promptly. And I gave you time to file an opposition to it, and you filed your own order, Mr. Horak. And the [circuit court] ended up signing [AOAO's counsel's] approximately a week later.
>
> As such, <u>the [circuit court] did dismiss [Maui Muscle's] restraining order, denied the motion for preliminary injunction</u>. I believe at that time your client, though maybe not present in the courtroom, was right outside getting ready to testify. So obviously the [circuit court] considers that you folks were present for the hearing, not only yourself but your clients as well.
>
> [The circuit court] finds that it was clear and unambiguous from the [circuit court's] December 6th oral ruling that Defendants should not have been prevented from obtaining demolition and/or building permits for the purposes of completing the renovation work.
>
> The [circuit court] also finds that sometime after the hearing on December 6, 2012 -- whether it be two hours or

later on that afternoon -- apparently yourself and your clients met with the [Director] or someone of authority at the [DPW] for the [County].

And <u>apparently you and your clients - and I don't find anything in here that you deny that yourself and your client made misrepresentations to the [Director] that the AOAO had no authority to apply for Permit 1417 without Dale Smith's written authorization because [Maui Muscle], not the AOAO, was the owner of the property for which Permit 1417 was issued</u>.

<u>I guess this resulted in the County putting this stop work order that went out</u>, I think, on December 7th, the next day, 2012.

The [circuit court] finds that you and your clients, Mr. Horak, violated the [Oral Order] of the [circuit court]. You provided false representations to the [Director] for the County. This is in direct contravention of the [circuit court's] order.

I don't know what you didn't understand about December 6th. This noncompliance, I think, is clear under the LeMay test. I think the [circuit court] has found by clear and convincing evidence that you did not diligently attempt to comply with the [circuit court's] order in a reasonable manner.

I think [AOAO's counsel's] arguments are well founded, and I'm surprised that he had to file a motion with the [circuit court] because I thought you folks would be in compliance from December 6th.

The AOAO had the green light prior to this. The [circuit court] denied that motion, and unfortunately you folks decided to blatantly disregard the [circuit court's] order, and that's why we're in court today.

So what I think is a proper sanction is, first of all, apparently you were able to undo the green light that [AOAO's counsel] had that very afternoon, so I'm ordering that you go ahead and undo what you have done, so that the AOAO does have the green light today.

That needs to be done today. You need to go over to the County, and you need to fix this. And once it's fixed, whatever written order you get from the County needs to be sent to [AOAO's counsel's] office today prior to 4:30.

(Emphases added.) The circuit court further stated that Horak would be sanctioned $1,000 for each day after the hearing that he failed to undo the stop work warning from the County.

On February 7, 2013, the circuit court filed its Contempt Order, holding Maui Muscle and its counsel, Horak, in contempt of court. The Contempt Order, stated in part:

1.    [Maui Muscle] . . . and Horak . . . took actions, including on or about December 6, 2012 after the hearing on [Maui Muscle's] Motion for Preliminary Injunction, to cause [DPW] to issue a Stop Work Warning ("Stop Work Warning") with respect to [Permit

11

1417] previously issued to the AOAO for work at the premises described therein;

2. Said actions taken by [Maui Muscle and Horak] were in direct contravention of the [Oral Order];

3. As a result of these actions of [Maui Muscle and Horak], [DPW] issued the Stop Work Warning on December 7, 2012, preventing the AOAO from performing the work authorized by the [Permit 1417];

4. These actions of [Maui Muscle and Horak] were taken in contempt and in violation of (1) the [circuit court's Oral Order] and (2) the [circuit court's] [Preliminary Injunction Order.]

The Contempt Order further ordered that Maui Muscle and Horak would be sanctioned $1,000 for every calendar day that the AOAO was "prevented from commencing work under [Permit 1417] due to [Maui Muscle and Horak's] failure to cause the County to rescind the Stop Work Warning."

On March 12, 2013, the circuit court held a hearing on AOAO's January 23, 2013 motion for summary judgment and Maui Muscle's February 25, 2013 motion for leave to file an interlocutory appeal from the Preliminary Injunction Order. The circuit court found Maui Muscle's motion for leave to file an interlocutory appeal was untimely and that appeal of the Preliminary Injunction Order would cause further unnecessary delay and denied the motion. The circuit court also sua sponte issued findings clarifying its Contempt Order. On March 28, 2013, the circuit court entered its Summary Judgment Order and its Amended Contempt Order.

The Amended Contempt Order provided: (1) Maui Muscle produced sufficient evidence that it had taken actions to cause the County to retract and/or rescind the stop-work order on February 7, 2013, thirteen days after January 24, 2013; (2) the total sanction amount against Maui Muscle would be $13,000; (3) the $13,000 should be paid to AOAO's counsel; and (4) Maui Muscle and Horak were jointly and severally liable for the sanction amount.

On April 26, 2013, the circuit court filed its Mandatory Injunction Order, granting in part and denying in part

AOAO's motion for mandatory injunction and ordering <u>inter alia</u> that Maui Muscle remove its personal and/or business property from the Commercial Unit or it should be deemed abandoned. Maui Muscle filed a notice of appeal from five of the circuit court's interlocutory orders that same day.

## II. DISCUSSION

AOAO contends this court lacks jurisdiction over Maui Muscle's appeal because the circuit court has not entered a final judgment and Maui Muscle failed to obtain leave to pursue appeal of the interlocutory orders. We conclude we have appellate jurisdiction only with regard to the appeal from the Amended Contempt Order.

There is no final judgment pursuant to <u>Jenkins v. Cades Schutte Fleming & Wright</u>, 76 Hawai'i 115, 869 P.2d 1334 (1994), and thus we have no appellate jurisdiction unless an exception to the finality requirement applies. Three exceptions to the finality requirement are: (1) if the circuit court allows an appeal to be taken from an interlocutory order pursuant to HRS § 641-1(b) (1993); (2) the collateral order doctrine; or (3) the <u>Forgay</u> doctrine. <u>See</u> HRS § 641-1(b); <u>Abrams v. Cades, Schutte, Fleming & Wright</u>, 88 Hawai'i 319, 321, 966 P.2d 631, 633 (1998) (regarding the collateral order doctrine); <u>Forgay v. Conrad</u>, 47 U.S. 201 (1848); <u>Ciesla v. Reddish</u>, 78 Hawai'i 18, 20, 889 P.2d 702, 704 (1995) (addressing the <u>Forgay</u> doctrine).

The circuit court did not certify any of the interlocutory orders for an appeal, and thus there is no appellate jurisdiction pursuant to HRS § 641-1(b).

Further, the <u>Forgay</u> doctrine does not apply. <u>See</u> <u>Ciesla</u>, 78 Hawai'i at 20, 889 P.2d at 704 ("The <u>Forgay</u> doctrine is an exception to the finality requirement for appeals and it allows an appellant to immediately appeal a judgment for execution upon property, even if all claims of the parties have not been finally resolved.").

The collateral order doctrine, however, applies with respect to the Amended Contempt Order. Under the collateral

order doctrine, appellate jurisdiction extends to interlocutory orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Abrams, 88 Hawaiʻi at 321, 966 P.2d at 633 (citations and internal quotation mark omitted) (block quote format altered). Orders fall under the collateral order doctrine if they: "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." Abrams, 88 Hawaiʻi at 322, 966 P.2d at 634 (citations and internal quotation mark omitted) (block quote format altered).

In Harada v. Ellis, 60 Haw. 467, 480, 591 P.2d 1060, 1070 (1979), the Hawaiʻi Supreme Court held that an interlocutory order not directly related to the merits of the case that directed payment of an assessed sum and was immediately enforceable through contempt proceedings satisfied the requirements of an appealable collateral order. The Amended Contempt Order in this case concerned Maui Muscle's conduct in obstructing the AOAO's permit from the County and allegedly disobeying the circuit court's rulings, rather than addressing the merits regarding ownership and control of the damaged property. Further, the Amended Contempt Order assessed $13,000 in sanctions against inter alia Maui Muscle, to be paid on or before 4:30 p.m. on April 12, 2013, and thus Maui Muscle was in immediate jeopardy of being found in contempt of court if it did not comply. The Amended Contempt Order thus satisfies the requirements for an appealable collateral order.

We therefore restrict our review to Maui Muscle's contentions regarding the Amended Contempt Order.

AOAO contends Maui Muscle violated the circuit court's Oral Order issued on December 6, 2012. On December 6, 2012, the circuit court granted AOAO's "motion to dismiss" Maui Muscle's

14

preliminary injunction motion, dissolved the TRO against AOAO, and invited AOAO to file for attorney's fees and costs. AOAO's opposition to Maui Muscle's preliminary injunction motion requested Maui Muscle's preliminary injunction motion be denied and the TRO be dissolved.

In its Contempt Order, the circuit court found contemptible actions taken by Maui Muscle and its representatives that "cause[d] the [DPW] to issue a Stop Work Warning" in violation of the circuit court's Oral Order and Preliminary Injunction Order. Maui Muscle's alleged contemptible actions occurred on December 6, 2012, however, and therefore could not have violated the December 13, 2012 Preliminary Injunction Order. AOAO did not claim that Maui Muscle violated the Preliminary Injunction Order. Instead, AOAO's Motion for Order to Show Cause, which gave rise to the Amended Contempt Order, specified that Maui Muscle and Horak should be held in contempt of the circuit court's Oral Order. Both the Contempt Order and the Amended Contempt Order specify that Maui Muscle and Horak should be held in contempt of the Oral Order.[4]

The Amended Contempt Order included findings that Maui Muscle had not "cure[d] their contempt" until February 7, 2013, thirteen days after the January 24, 2013 hearing on AOAO's motion for the contempt order. We review the circuit court's Amended Contempt Order under an abuse of discretion standard. LeMay, 92 Hawai'i at 620, 994 P.2d at 552.

> [I]n order to hold a party in civil contempt, a movant must establish that: (1) the <u>order with which the contemnor failed to comply is clear and unambiguous</u>; (2) the <u>proof of noncompliance is clear and convincing</u>; and (3) the contemnor has not diligently attempted to comply in a reasonable manner.

LeMay, 92 Hawai'i at 625, 994 P.2d at 557 (citations omitted and

---

[4]    The Contempt Order also found Maui Muscle and Horak in contempt of the Preliminary Injunction Order, which was erroneous because alleged contemptible acts occurred on December 6, 2012 prior to the Preliminary Injunction Order filed December 13, 2012. Maui Muscle and Horak could not have been clearly and unambiguously subject to orders in "the four corners" of a document that did not exist on December 6, 2012. LeMay v. Leander, 92 Hawai'i 614, 625, 994 P.2d 546, 557 (2000).

emphases added).

The Oral Order dissolved Maui Muscle's TRO and granted AOAO's motion to dismiss Maui Muscle's preliminary injunction motion. "[T]o hold a party in civil contempt, there must be a court decree that sets forth in specific detail an unequivocal command that the contemnor violated, and the contemnor must be able to ascertain from the four corners of the order precisely what acts are forbidden." LeMay, 92 Hawai'i at 625, 994 P.2d at 557 (citations and internal quotation marks omitted). The December 6, 2012 Oral Order was not reduced to a written document with "four corners" until the circuit court filed its Preliminary Injunction Order on December 13, 2012. Id.

Parties point to no authorities in this jurisdiction indicating that an "oral order" may satisfy the requirements of a "clear and unambiguous" order under LeMay. Id. Assuming arguendo that the transcript of the Oral Order constitutes an order with "four corners" under LeMay, we proceed to review the remaining LeMay requirements. LeMay, 92 Hawai'i at 625, 994 P.2d at 557.

The Oral Order's denial of Maui Muscle's preliminary injunction motion meant the circuit court found Maui Muscle did not carry its burden of meeting the standard for a preliminary injunction, but such a conclusion did not clearly and unambiguously constitute an order that Maui Muscle refrain from asserting its allegations of ownership to the Commercial Unit.

The Oral Order dissolving the TRO did not prevent Maui Muscle from raising a dispute as to whether AOAO was the proper permit applicant to County officials. Dissolution of the TRO allowed AOAO to apply for a County demolition and/or building permit on the subject property. The Oral Order dissolving the TRO did not "clear[ly] and unambiguous[ly]" enjoin Maui Muscle and its representatives from alleging to the County that its ownership rights in the Commercial Unit should prevent AOAO from entering that property.

There was no "clear and convincing" proof of Maui

16

Muscle's noncompliance with the Oral Order. LeMay, 92 Hawai'i at 625, 994 P.2d at 557. The circuit court stated that "apparently [Maui Muscle] met with the [Director] of the [DPW] or someone of authority at the [DPW] for the [County]," and that it was apparent Maui Muscle "made misrepresentations" to the Director that they were the owner of the Commercial Unit property. The circuit court "guess[ed that] this resulted in the County putting this stop work order . . . ."

The Oral Order did not order Maui Muscle to refrain from alleging its ownership rights in the commercial property. The circuit court's finding that Maui Muscle violated the Oral Order constituted an abuse of discretion that is reversible on appeal.

Because we conclude the circuit court abused its discretion by determining that AOAO clearly and convincingly established the first two LeMay factors, and because AOAO was required to establish all three factors, we need not determine whether AOAO established that Maui Muscle had "not diligently attempted to comply in a reasonable manner." LeMay, 92 Hawai'i at 625, 994 P.2d at 557.

### III. CONCLUSION

For the foregoing reasons, Maui Muscle's appeal from the following orders of the Circuit Court of the Second Circuit is dismissed for lack of appellate jurisdiction:

(1) "Order Granting Defendant Association of Apartment Owners of Valley Isle Resort's Motion for Summary Judgment," filed March 28, 2012;

(2) "Order Denying Maui Muscle Sports Club Kahana, LLC's Motion for Preliminary Injunction," filed December 13, 2012;

(3) "Order Granting Association of Apartment Owners of Valley Isle Resort's Motion for Order to Show Cause Why Maui Muscle Sports Club Kahana, LLC and John G. Horak, Esq. Should Not Be Held in Contempt for Violation of the Court's Oral Ruling on December 6, 2012," filed February 7, 2013; and

(4) "Order Granting in Part and Denying in Part Association of Apartment Owners of Valley Isle Resort's Motion for Mandatory Injunction," filed April 26, 2013.

We also vacate the Circuit Court of the Second Circuit's "Order Amending February 7, 2013 Order Granting Defendant Association of Apartment Owners of Valley Isle Resort's Motion for Order to Show Cause Why Plaintiff Maui Muscle Sports Club Kahana LLC and John G. Horak, Esq. Should Not Be Held in Contempt for Violation of the Court's Oral Ruling on December 6, 2012," filed March 28, 2013, and remand this case for proceedings consistent with this opinion.

DATED:  Honolulu, Hawai'i, July 23, 2014.

On the briefs:

Tom Pierce
Peter N. Martin
(Tom Pierce, Attorney at Law)
for Plaintiff-Appellant.

Michael L. Lam
Lauren Sharkey
Lisa K. Johnson
(Case Lombardi & Pettit)
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

18